JOSHUA D. HURWIT
UNITED STATES ATTORNEY
KATHERINE L. HORWITZ, OKLAHOMA STATE BAR NO. 30110
FRANCIS J. ZEBARI, IDAHO STATE BAR NO. 8950
ASSISTANT UNITED STATES ATTORNEYS
1290 W. MYRTLE STREET, SUITE 500
BOISE, IDAHO 83702
TELEPHONE: (208) 334-1211
FACSIMILE:(208) 334-1413

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH ALAN HOADLEY,<br><br>Defendant. | Case No. 1:22-cr-00056-DCN<br><br>**GOVERNMENT'S MOTION TO ADMIT INTRINSIC AND OTHER BAD ACTS EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)** |

The United States of America and Joshua D. Hurwit, United States Attorney for the District of Idaho, and Assistant United States Attorney, hereby moves the Court to admit in limine evidence pursuant to Federal Rule of Evidence 404(b). The government intends to offer evidence related to Defendant Joseph Alan Hoadley's other instances of striking arrestees who were handcuffed, using force as punishment, and bragging about such events to his fellow officers. Such evidence is probative of the Defendant's knowledge, lack of mistake, and intent under Rule 404(b).

GOVERNMENT'S MOTION TO ADMIT
PRIOR ACTS UNDER RULE 404(B)—1

I.   **BACKGROUND**

   A.   **Factual Background of Charged Excessive Force Offenses (Counts One and Two)**

On March 30, 2017, four Caldwell City Police Department ("CPD") Officers, including Defendant Hoadley (then a lieutenant), responded to the Caldwell home of B.H. after a 911 call from the home was disconnected. Officer Amber Walker and Defendant Hoadley were the first CPD officers to arrive at the B.H. residence. Upon arriving at the house, Officer Walker knocked on a side window and then reached over a latched gate in a backyard fence, unlatched it, and entered the fenced yard. Once inside the yard, she unlatched and unlocked a second gate on the opposite side of the house to admit Defendant Hoadley.

Once inside the yard, Defendant Hoadley opened a rear door of the residence and found C.H. (a minor) standing just inside the door frame. The officers pushed their way past C.H. and entered the house, where they found C.H.'s elderly grandmother, S.H., sitting in the living room. While questioning S.H. about the disconnected 911 call, Defendant Hoadley asserted that he smelled marijuana and announced his intention to search the house. C.H. informed Defendant Hoadley that his father, B.H., was downstairs in the basement playing video games.

Defendant Hoadley and Sergeant Adam Matthews approached the basement stair door and ordered B.H. to come upstairs, which he did. Sergeant Matthews searched B.H.'s person and directed him to sit on the couch next to C.H. and he did so. Defendant Hoadley and Officer Walker remained in the living room and questioned C.H. and B.H. while Sergeant Matthews searched the basement.

GOVERNMENT'S MOTION TO ADMIT
PRIOR ACTS UNDER RULE 404(B)—2

After a few moments, Sergeant Matthews returned and notified Defendant Hoadley that he had discovered marijuana. Defendant Hoadley ordered B.H. to stand up and turn around, then placed H.B. in handcuffs. Throughout the encounter, B.H. verbally protested the officer's warrantless entry into his house and accused the officers of fabricating the 911 hang-up call.

Despite his disagreement with the officers' conduct, however, B.H. complied with all instructions and offered no physical resistance whatsoever. After a few minutes of further conversation, Defendant Hoadley escorted the now handcuffed B.H. out of the front door of the house. Officer Walker remained inside.

Meanwhile, Officer Eduardo Ibarra was standing outside the B.H. residence in the front yard, drawn to the scene by Sergeant Matthews' radio broadcast for assistance. Officer Ibarra refrained from entering the B.H. residence because he believed that Defendant Hoadley was conducting an unlawful search and did not want to be a part of it. As a result, Officer Ibarra was the only officer to observe Defendant Hoadley escorting B.H. from his home. As Defendant Hoadley and B.H. emerged, Defendant Hoadley told B.H. that he was "not very good at taking care of [his] of mother," to which B.H. replied: "you're not very good at being a police officer." Officer Ibarra witnessed Defendant Hoadley and B.H. talking when Defendant Hoadley suddenly punched B.H. in the face while B.H.'s hands were handcuffed behind his back. The blow caused B.H. to collapse onto the ground where B.H.'s head came to rest on Ibarra's feet. B.H. began to yell about the assault, at which point Officer Walker approached.

Officer Walker walked out the front door and into the yard, where B.H. was lying on the ground on his right side with his head resting on Officer Ibarra's boots. As Officer

Walker approached, Defendant Hoadley spoke to B.H., saying "stop trying to escape, nobody punched you in the face." B.H. replied: "Yeah you did . . . and this dude's seen it!"

In his report, Defendant Hoadley described the incident as follows:

> We ceased our questioning of B.H., however, he continued to talk and ask questions and challenge the authority of the officers. At this time, I detained B.H. in handcuffs and escorted him out of the living room and into the front yard. While doing so, B.H. began to get aggressive. I felt his forearms tense up while escorting him to an awaiting police car just before he attempted to pull away from me. I kept ahold of his left arm and continued escorting him towards the roadway. B.H. again pulled away even harder at which time I believed he was attempting to escape. I used my left hand to force him to the ground by his shirt collar.
>
> Once on the ground, I ordered B.H. to stop trying to fight and escape from officers. He was arrested to his feet before being placed in the back of Ofc. George's patrol car.

The statements in Defendant Hoadley's report that he grabbed B.H. by the collar of his shirt and that B.H. was aggressive and resisting were false.

### B. Factual Background of Charged Obstruction Offenses (Counts Three and Four)

In 2020, the Federal Bureau of Investigation (FBI) received multiple internal whistleblower reports of abusive police practices within the CPD, including allegations that Defendant Hoadley punched handcuffed detainees in the head and bragged about the same to his fellow officers. Amongst the various reported events, Officer 4 told the FBI that during a gang conference in 2016 Defendant Hoadley had shown him a video wherein Defendant Hoadley was punching a seated, handcuffed detainee in the face with a closed fist. Defendant Hoadley bragged to Officer 4 about this incident and affirmed he had struck the detainee, who was not resisting.

In response to receiving these reports from CPD officers, the FBI began to investigate Defendant Hoadley—among other CPD officers—for willfully depriving Caldwell residents of their constitutional rights. Defendant Hoadley immediately became aware of the FBI's investigation and voiced his belief that it was a "witch hunt" to members of his department and to Caldwell leaders. In addition to voicing displeasure with being the subject of the federal investigation, Defendant Hoadley proactively obstructed it.

On June 28, 2021, the FBI informed the then-CPD Chief that the investigation into Defendant Hoadley and another CPD Officer was being referred to prosecutors for criminal prosecution. The next day, June 29, Defendant Hoadley called a subordinate CPD Officer, C.H., into his office. During this encounter with C.H., Defendant Hoadley and another CPD Officer who was the target of the investigation "ambushed" C.H. about his communications with the FBI. Defendant Hoadley threatened C.H. to "remember what patch [was] on [his] shoulder" and to "remember who [he] worked for," denying C.H.'s request to have his direct supervisor present. C.H. immediately reported this conversation because he understood Defendant Hoadley to be threatening his career if he reported anything to the FBI or was otherwise not "loyal."

Months later, in March of 2022, Defendant Hoadley received a letter from the United States Attorney's Office informing him that he was the target of an ongoing investigation. Pursuant to negotiations with his counsel, the government provided Defendant Hoadley with the material collected by the FBI during its investigation. After entering into pre-indictment negotiations with the government, Defendant Hoadley signed a plea agreement admitting that he had assaulted B.H. and pleading guilty to depriving B.H. of his constitutional rights. Shortly thereafter, however, Defendant Hoadley withdrew his

agreement to this deal.  Accordingly, two weeks later, on April 13, 2022, a federal grand jury in Boise indicted Defendant Hoadley for his assault of B.H. on March 30, 2017, in Counts One and Two, charging deprivation of constitutional rights in violation of 18 U.S.C. § 242 and falsification of records in a federal investigation in violation of 18 U.S.C. § 1519. *See* ECF 14.

One week after he was indicted, on April 20, 2022, Lieutenant Dave Wright with the CPD instructed Defendant Hoadley that he needed to return his department-issued cellphone, laptop computer, and firearms as he was on administrative leave.  Lieutenant Wright sent Defendant Hoadley a letter requesting this property via text message.  Defendant Hoadley told Lieutenant Wright that he was with his son and would not be able to meet to turn over the property.  Defendant Hoadley also told Lieutenant Wright that he needed to talk to his lawyer.  When Lieutenant Wright did not hear back from Defendant Hoadley, he called again.

This call resulted in Lieutenant Wright picking up the property the next day, April 21, from Defendant Hoadley at his house.  When Lieutenant Wright picked up the property, Defendant Hoadley stated he thought the investigation and charges were unfounded and unfair.  Lieutenant Wright took the computer to the city's staff to extract the data from Defendant Hoadley's computer and discovered that the data from the cellphones and computer had been wiped the previous evening.  Lieutenant Wright then turned the computer and cellphones over to the FBI.  Forensic agents with the FBI confirmed that the computer's and cellphone's data had been erased the evening of April 20.  The computer had been checked out to Defendant Hoadley since 2016 and presumably contained his messages and emails, as well as videos.  Defendant Hoadley wiped the data from his work-

issued computer and cellphones one week after he was indicted for the excessive force and destruction of records offenses alleged in Counts One and Two. For this obstruction of the federal investigation, the grand jury superseded in August and indicted Defendant Hoadley for harassing a witness, C.H., in violation of 18 U.S.C. § 1512(d)(2) in Count Three, and destroying a record in violation of 18 U.S.C. § 1512(c)(1) in Count Four.

## II. LEGAL FRAMEWORK

### A. Inextricably Intertwined Intrinsic Evidence is Admissible.

Evidence that is inextricably intertwined with charged offenses is direct evidence and exempt from Rule 404(b) analysis. *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012); *United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002); *United States v. Mundi*, 892 F.2d 817, 820 (9th Cir. 1989); *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987). The Ninth Circuit has held that there are "[t]wo general categories of other act evidence" that may be considered "inextricably intertwined" with the charged crime and, thus, exempted from the requirements of Rule 404(b).

The first category is other act evidence that may constitute "a part of the transaction that serves as the basis for the criminal charge." *Dorsey*, 677 F.3d at 951 (citing *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995)). Stated another way, the other acts are inextricably intertwined where they are part of a "single criminal episode." *Soliman*, 813 F.2d at 279 ("The policies underlying [Rule 404(b)] are simply inapplicable when some offenses committed in a single criminal episode become 'other acts' because the Defendant is indicted for less than all of his actions."). The second category is other act evidence "that may be necessary . . . to permit the prosecutor to offer a coherent and comprehensible story

regarding the commission of the crime." *Dorsey*, 677 F.3d at 951 (citing *Vizcarra- Martinez*, 66 F.3d at 1012–13); *see also United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004).

Applying these categories, the Ninth Circuit has held that other acts that occurred within the temporal scope of the charged crime are inextricably intertwined. *Soliman*, 813 F.2d at 279; *United States v. Montgomery*, 384 F.3d 1050, 1064 (9th Cir. 2004); *see also United States v. Rizk*, 660 F.3d 1125, 1131–32 (9th Cir. 2011). And because intent is often at issue in white collar cases, evidence of other acts is especially likely to be inextricably intertwined with knowledge or criminal intent.

B.   Other Bad Acts Evidence Under Rule 404(b)

Rule 404(b) of the Federal Rules of Evidence governs the admissibility of non-inextricably intertwined evidence concerning "other crimes, wrongs, or acts" committed by a defendant. That rule provides:

> Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

The Ninth Circuit has specified that "Rule 404(b) is a rule of inclusion." *United States v. Alfonso*, 759 F.2d 728, 739 (9th Cir. 1985). "Thus, evidence of past wrongful acts is admissible if it is relevant to an issue other than the Defendant's character or criminal propensity." *Id.* Put differently, "[u]nless the evidence of other crimes tends only to prove propensity, it is admissible." *United States v. Jackson*, 84 F.3d 1154, 1159 (9th Cir. 1996). Thus, "[o]nce it has been established that the evidence offered serves [one of the purposes authorized by Rule 404(b)], . . . the only conditions justifying the exclusion of the evidence are those described in Rule 403 . . . ." *United States v. Major*, 676 F.3d 803, 808 (9th Cir.

2012) (citing *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (en banc)) (alterations in original).

The Ninth Circuit has set out a four-part test for the admissibility of 404(b) evidence. Evidence is admissible when: (a) sufficient proof exists for the jury to find that the defendant committed the other acts; (b) the other acts are offered to prove a material issue in the case; (c) the other acts were not too remote in time; and (d) the other acts are sufficiently similar to the charged conduct. *Major*, 676 F.3d at 808; *United States v. Murillo*, 255 F.3d 1169, 1175 (9th Cir. 2001); *United States v. Bracy*, 67 F.3d 1421, 1432 (9th Cir. 1995). The decision whether to admit 404(b) evidence is committed to the district court's discretion. *United States v. Schales*, 546 F.3d 965, 976 (9th Cir. 2008).

Where, as here, intent is an element of the offense, the government may introduce Rule 404(b) evidence in its case-in-chief to prove intent regardless of whether the defendant plans to make an issue of intent. *United States v. Hadley*, 918 F.2d 848, 851–52 (9th Cir. 1990); *United States v. Spillone*, 879 F.2d 514, 518 (9th Cir. 1989) (ruling that evidence of prior conviction properly admitted on issue of intent despite Defendant's promise not to argue it).

**III.   ARGUMENT**

Applying those principles here, the government seeks permission to admit at trial the following evidence: (1) Defendant Hoadley's provocation and use of excessive force in response to a 911 call in April of 2016; (2); Defendant Hoadley's punching a seated and handcuffed detainee in his head during a response to a 911 call in February of 2017; and (3) Defendant Hoadley bragging to another CPD officer about punching a seated handcuffed detainee while showing a video of the same. Each delineated act squarely addresses

GOVERNMENT'S MOTION TO ADMIT
PRIOR ACTS UNDER RULE 404(B)—9

whether the Defendant willfully deprived B.H. of his constitutional right to be free from unreasonable seizure through the use of excessive force while detained in handcuffs. Accordingly, all prior acts are highly relevant and would assist the trier of fact in reaching that determination. Before addressing the evidence offered herein under Rule 404(b), the government will first address the incident involving Officer 4, which is intrinsic evidence.

**A.    Evidence of Defendant Hoadley bragging about punching a handcuffed detainee to Officer 4 is intrinsic evidence and admissible as such without operation of Rule 404(b).**

During a gang conference in 2016, Defendant Hoadley bragged about using excessive force to his fellow officers and showed a video of himself punching a seated and handcuffed detainee in the head to Officer 4, as well as C.H. Officer 4 reported this event to the management within his department and, ultimately, the FBI. This report started the FBI's investigation. Moreover, because C.H. is the victim of the harassment alleged in Count 3, unlike the incidences discussed in III.B, this fact is circumstantial evidence of the charges against Defendant Hoadley. As such, this incident is necessary to explain to the jury the prosecution's "coherent and comprehensible story regarding the commission of the crime." *See United States v. Taylor*, 239 F.3d 994, 952 (9th Cir. 2001). The evidence of this incident is intrinsic to the crimes alleged and, therefore, is admissible and exempted from Rule 404(b). Nevertheless, out of an abundance of caution, it is also included herein as a prior bad act admissible to prove the willfulness of Hoadley's use of excessive force as to the charged assault against B.H.

GOVERNMENT'S MOTION TO ADMIT
PRIOR ACTS UNDER RULE 404(B)—10

**B.     Two prior incidences establishing Defendant Hoadley's use of unreasonable force are admissible under Rule 404(b).**

The government seeks to admit evidence of a prior instance where Defendant Hoadley used excessive force and one instance where he bragged about using excessive force to another officer. Each is admissible under Rule 404(b) to establish that Defendant Hoadley willfully deprived B.H. of his constitutional right to be free from unreasonable seizures on March 30, 2017.

**1. Shoving and Striking K.W.**

In April of 2016, three CPD Officers, including Defendant Hoadley, responded to a 911 call involving an intoxicated person, K.W., at a Caldwell residence. Upon arrival, Officers 6 and 7 spoke with K.W. outside of the residence. After speaking with Officers 6 and 7, K.W. turned to go back into the residence. As K.W. was walking back into the residence, Defendant Hoadley confronted K.W. and provoked a more confrontational interaction. Defendant Hoadley told K.W.: "Don't step up on me," and aggressively shoved K.W.—a slight elderly man—by striking K.W. in the upper body. The assault knocked K.W. to the ground.

Both Officer 6 and Officer 7 were surprised by the use of *any* force by Defendant Hoadley because K.W. had not posed a danger to the officers during the interaction. In fact, Defendant Hoadley specifically attempted to provoke K.W. into a confrontation after the call had been resolved and K.W. was simply walking back into his home. After being knocked to the ground outside his home, K.W. simply got up and went inside. Because K.W. was not arrested, Defendant Hoadley did not write a report on this incident.

GOVERNMENT'S MOTION TO ADMIT
PRIOR ACTS UNDER RULE 404(B)—11

### 2. Bragging about Punching Handcuffed Detainee (Officer 3)

At the end of 2015, Officer 3 walked by Defendant Hoadley's office in the CPD when he heard Defendant Hoadley laughing at something. Officer 3 asked what Defendant Hoadley found so funny. In response, Defendant Hoadley showed Officer 3 a video of himself punching a handcuffed and seated detainee in the face. Troubled, Officer 3 confronted Defendant Hoadley about the video. Defendant Hoadley responded, laughing, that "it looked like [the detainee] was getting ready to spit on me." Officer 3 immediately reported this incident to the then-Chief of CPD.

### 3. Both events are admissible evidence of Defendant Hoadley's knowing and willful violation of B.H.'s constitutional rights under Rules 404(b).

When, as here, the theory of admissibility under Rule 404(b) is based in part on knowledge, the government must prove "a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act." *United States v. Mayans*, 17 F.3d 1174, 1181–82 (9th Cir. 1994). The logical connection here is plain: The evidence is relevant to show willfulness in the charged offense here of the exact same offense. *See United States v. Ramirez-Robles*, 386 F.3d 1234, 1242–43 (9th Cir. 2004); *see also United States v. Montgomery*, 150 F.3d 983, 1001 (9th Cir. 1998).

In order to prove a violation of 18 U.S.C. § 242, the government must show beyond a reasonable doubt that: (1) that the defendant acted under color of law; (2) that the defendant deprived the victim of a right secured or protected by the Constitution or laws of the United States; (3) that the defendant acted willfully; and, for a felony violation; and (4) that the defendant's actions resulted in bodily injury or involved the use of a dangerous

weapon.  *See* 18 U.S.C. § 242; *United States v. Lanier*, 520 U.S. 259, 264 (1997) (citing *Screws v. United States*, 325 U.S. 91 (1945)).  In this case, because the assaults took place during the course of arrests, the federally protected right at issue is the victims' Fourth Amendment right to be free from an unreasonable seizure.  *See Graham v. Connor*, 490 U.S. 386, 388 (1989) (holding that claims that law enforcement officers used excessive force during an arrest are evaluated under the Fourth Amendment's "reasonableness" standard); *United States v. Reese*, 2 F.3d 870, 883–84 (9th Cir. 1993) (explaining that "an excessive force in arrest claim is quintessentially a Fourth Amendment claim; an officer using excessive force to arrest a person has unreasonably seized that person").

The evidence of these prior bad acts establishes that Defendant Hoadley knowingly and willfully violated B.H.'s constitutional right to be free from excessive force during his detention.  *See United States v. Mize*, 498 F. Supp. 3d 978, 983–85 (S.D. Ohio 2020) (admitting three prior instances of excessive force as "highly probative of [the defendant's] state of mind" as to willfulness element in § 242 prosecution).  Each prior instance shows Defendant Hoadley's conduct on March 30 was willful.  The similarities of the assaults on K.W. and B.H. show why.  Both instances of abusive use of force arose from a 911 call wherein Defendant Hoadley was tasked with responding to a disruptive or community caretaking call.  In response to these calls, Defendant Hoadley, then an acting lieutenant with CPD, responded alongside his patrolmen to residences.  During his interaction at each residence, Defendant Hoadley intentionally used excessive force against the resident as punishment for a perceived disrespect, without adequate justification.  *See United States v. Cowden*, 882 F.3d 464, 472–73 (4th Cir. 2018) (affirming admission of prior excessive force

GOVERNMENT'S MOTION TO ADMIT
PRIOR ACTS UNDER RULE 404(B)—13

incidents that showed pattern of defendant using force when he "perceived that an individual was not showing adequate respect to law enforcement officers" in § 242 trial).

Like his assault on B.H., the victim in the video witnessed by Officer 3 was handcuffed when Defendant Hoadley punched him. This incident provides crucial insight into Defendant Hoadley's state of mind when he uses force. Officer 3 reported that Defendant Hoadley was *delighted* by punching a handcuffed detainee. This delight is evidence of Defendant Hoadley's intent and willfulness when using force against B.H.—another detainee who was handcuffed when Defendant Hoadley punched him. *See United States v. Krug*, No. 15-CR-157, 2017 WL 907817 (W.D.N.Y. Mar. 8, 2017) ("It is, of course, difficult to prove intent without circumstantial evidence . . . [a]nd it is even more difficult to prove a unique type of specific intent, such as that required by § 242, without circumstantial evidence.").

Finally, the lack of documentation as to the use of force in these incidences is likewise evidence of willfulness. Neither the assault on K.W. or B.H. were documented in Defendant Hoadley's body camera nor was either instance reviewed or documented pursuant to the CPD's internal use-of-force program and policy.

When the prior act is closely similar to the charged act, as here, the Ninth Circuit has approved seven-, eight-, and even thirteen-year gaps between the Rule 404(b) conduct and the charged conduct. *See United States v. Rude*, 88 F.3d 1538, 1550 (9th Cir. 1996) (upholding seven- and eight-year gaps); *see also United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997) (thirteen-year gap); *United States v. Ross*, 886 F.2d 264, 267 (9th Cir. 1989) (thirteen-year gap). Here, each prior instance occurred within a year and a half of the charged offense.

GOVERNMENT'S MOTION TO ADMIT
PRIOR ACTS UNDER RULE 404(B)—14

### 4. Rule 403 Analysis

None of the evidence noticed herein is subject to exclusion under Rule 403. Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Because all the evidence discussed herein is helpful to the government's case, it is necessarily prejudicial to the Defendant. But it is not unduly prejudicial. Rather, the proffered bad acts herein are crucial evidence of Defendant Hoadley's state of mind at the time he used excessive force, namely, of his intent to punish B.H. for disrespecting him. So limited, this proffered Rule 404(b) is not cumulative, misleading, or a waste of time. Finally, any potential issues of jury confusion can be addressed by the Ninth Circuit's limiting instruction regarding Rule 404(b) evidence. *See United States v. Charley*, 1 F.4th 637, 642 (9th Cir. 2021) (quoting the limiting instruction, which directs the jury "to consider the evidence 'only for its bearing, if any, on the question of [the defendant's] intent, motive, and identity and for no other purpose").

### CONCLUSION

For the foregoing reasons, the Court should admit Officer 4's testimony regarding Defendant's Hoadley's prior assault as evidence inextricably intertwined with the allegations against the Defendant in the Superseding Indictment. Additionally, the Court should admit the incidences identified herein under Rule 404(b) as each delineated act squarely speaks to whether the Defendant willfully deprived B.H. of his constitutional right to be free from unreasonable seizure through the use of excessive force while detained in

handcuffs. Accordingly, all prior acts are highly relevant, would assist the jury in reaching their determination, and are admissible under Rule 404(b).

Respectfully submitted this 19th day of August, 2022.

JOSHUA D. HURWIT
UNITED STATES ATTORNEY
By:

*/s/ Katherine L. Horwitz*
KATHERINE L. HORWITZ
Assistant United States Attorney

*/s/ Francis J. Zebari*
FRANCIS J. ZEBARI
Assistant United States Attorney

GOVERNMENT'S MOTION TO ADMIT
PRIOR ACTS UNDER RULE 404(B)—16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 19, 2022, the foregoing **GOVERNMENT'S MOTION TO INTRODUCE INTRINSIC AND PRIOR BAD ACT EVIDENCE** was electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy was served on the following parties or counsel: Charles Peterson, 671 E. Riverpark Lane, Suite 210, Boise ID 83706.

        */s/ Katherine L. Horwitz*
        KATHERINE L. HORWITZ
        Assistant United States Attorney