Charles F. Peterson ISB# 3346
PETERSON LAWYERS
671 E. Riverpark Lane, Suite 210
Boise, Idaho  83706
Telephone (208) 342-4633
FAX (208) 955-2020
chuck@petersonlawyers.com

Attorney for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | Case No. 22-cr-00056-SWK |
|---|---|
| Plaintiff, | |
| | DEFENDANT'S TRIAL BRIEF |
| vs. | |
| JOSEPH ALAN HOADLEY, | |
| Defendant. | |

JOSEPH HOADLEY submits the following for the Court's consideration as this case proceeds to trial next Monday.

**I.  The Pending Counts**

There are four Counts to be tried in this case. Count One alleges that Mr. Hoadley willfully deprived B.H. of his right to be free from an unreasonable seizure, on the theory that Hoadley used excessive force. We have previously detailed the event giving rise to the charge in the Response and Objection to Government's Motion to Exclude Victim's Criminal History.[1] Mr. Hoadley denies that he used excessive force or that H.B was injured. H.B. hid from police who responded to a 911 hang-up call, with good reason, he had five to six pounds of marijuana packaged for sale in the basement of his mother's

---

[1] Docket 44, pp. 1-6.

HOADLEY TRIAL BRIEF -  1

house, where he resided. Any force used to keep him from resisting and escaping was reasonable. B.H. did not make any claim or file any civilian complaint that he had been the subject of excessive force. When the matter was raised by the FBI, and then considered by the CPD, Hoadley was not found to have used excessive force.

A few words about excessive force seems appropriate here.

First, whether force is excessive is judged by the totality of the circumstances surrounding the incident, and the matter is not judged with the benefit of hindsight. An officer does not have to wait until a detainee has broken loose from his hold, or kicked the officer, or head butted the officer or has injured the officer. The officer acts based on his or her training and experience in similar situations. He or she acts to protect the officer, and the arrestee. The officer acts to prevent damage to others or an escape. In this situation, nobody was injured, B.H. was ultimately moved from the ground to the waiting police cruiser with the assistance of a second officer.

Second, the use of restraints on an arrestee is a significant fact but is not dispositive of whether the use of force was appropriate. Handcuffs do not make it impossible for a person to resist, escape or injure an officer. B.H. was escalating his resistance as he was removed from the house to await a search warrant and to de-escalate his complaints that officers had no right to be in the house without a warrant. That resistance escalated and the person who stood to be injured was Joseph Hoadley. He was the officer who felt B.H. tense up and believed force was necessary. He had to make the call, and B.H. was not injured. He did not file a civilian complaint for excessive force.

Third, as part of the totality of the circumstances, Hoadley knew that a 911 hang-up call had been made from the land line phone in the house, which was owned by B.H.'s

elderly mother. She and his teen age son were in that home. He knew a prior 911 call from that house had been made in which a person was threatened with serious injury. He knew at the time he made the decision that B.H. had been hiding in the basement, where 5-6 lbs of marijuana had been found in plain view. He knew that B.H. repeatedly denied there was marijuana in the house and had been complaining about the search of the house from almost the moment he climbed the stairs after officers called him up. He knew that B.H. had told them there was nothing in the house and no reason to search. He knew that the amount of marijuana the other officers had seen in the basement would amount to a felony, and a crime identified under Idaho law as trafficking, which included a mandatory minimum sentence for B.H. if he was convicted. When then LT Hoadley grabbed B.H. and took him to the ground it was not to punish B.H. He did so because he knew that B.H. posed a risk of injuring him or escaping or both. He had to make that call and he did so for all the right reasons.

There is one more thing that matters here. The law does not require an officer to make a perfect decision. The law requires he or she act reasonably under the circumstances. That is exactly what Joseph Hoadley did. It was also no surprise to hear B.H. claim that Joey had punched him. He knew he had not punched B.H. or struck him in the head or face. He knew, that was the last gasp claim for a drug trafficker caught with the goods – police brutality. That claim is false. Just like B.H.'s claim there was no marijuana in the house.

Count Two alleges Hoadley falsified records relating to the B.H. incident, essentially by not reporting the conduct alleged in Count One. Mr. Hoadley is not guilty

of Count One and he cannot be guilty of Count Two because nothing in his report was false.

Count Three alleges that Mr. Hoadley, having learned he was under investigation by the FBI, attempted to intimidate C.H. from reporting anything negative about his work at Caldwell Police Department. At Hoadley's request, C.H. went to a meeting with his immediate supervisor SGT B, and then Lieutenant Hoadley. Hoadley was there to hear both sides of a dispute between SGT B and C.H. Hoadley supervised both C.H. and SGT B, although C.H. had been assigned to a joint City and County Narcotics Unit.

C.H. was asked to meet with Hoadley because of issues that had arisen in his job performance. C.H. objected to the meeting and said he wanted his supervisor present. Hoadley was his supervisor and told him so. C.H. did not like that answer, and he claims that Hoadley was trying to intimidate him and keep him from providing information to the FBI about Caldwell City Police Department. C.H went to the Human Relations Office for the city and reported the matter. Human Relations Director Battaglia said he did not have a claim and sent him to the Captain, who was Hoadley's supervisor. Captain Riley investigated the claim and rejected any wrongdoing.

C.H. was not intimidated and continued to provide information on the department to the FBI and has testified at a prior hearing in this matter and is certain to testify at trial. He met with and was interviewed by or made reports to the government and its agents on July 1, 2021, February 1, 2022, February 7, 2022, and September 9, 2022. Nothing about Hoadley's comments could be considered harassing, coercive or intimidating. The comment that C.H. relies upon was made by Hoadley in response to C.H.'s claim

Hoadley was not his supervisor. Hoadley reportedly responded, "I am your supervisor. Look at the patch on your shoulder. You work for Caldwell City Police."

C.H. did work for CPD and Hoadley was his superior officer and supervisor. If C.H. felt that comment was intimidated or intended to intimidate him from cooperating with the investigation, his conduct suggests otherwise. City HR Director found no actionable conduct by Hoadley, neither did Captain Riley.

Count Four alleges that Hoadley "corruptly altered, destroyed, mutilated, and concealed a record" with the "intent to impair its integrity and availability for use in an official proceeding." The gist of this claim is that he "wiped his laptop and cell phone" after being requested to turn it in. This was on April 22, 2022.

The month before, on March 24, 2022, Hoadley had received a letter from the City removing him from access to the police station, city email and mobile data terminal (this is the computer in the police vehicle). Alyssa Battaglia, the Human Resources Director, wrote the following:

"While we understand that the reason you are on paid administrative leave is not due to disciplinary action, there have been discussions between myself, the Mayor, and the City Attorney and we feel at this time this is in the best interest for you and the City."

On April 21, 2022 Battaglia had another letter delivered to Hoadley that required him to turn in his equipment. That letter from Battaglia repeated the above language. He was not being asked to turn in his gear for disciplinary reasons. He was on paid administrative leave.

Mr. Hoadley complied. He was not pending any disciplinary action. He did not intend to make any record unavailable for use in any proceeding. He knew from his twenty years of experience that the Macbook and iPhone would be reset and provided to

HOADLEY TRIAL BRIEF - 5

another officer. He also knew that the FBI investigation had been ongoing for a year and a half or more. They had interviewed virtually every officer in CPD and had told many that they were after him and four other officers. He knew that CPD had a server and the ability to remotely access electronics it provided officers. There was also software, that could be used to get at deleted information from electronics. As he was charged with only Counts One and Two at that point, there was no reason to believe the government would be looking for information on either the iPhone or the laptop. And they had already locked him out of the desktop computer he relied on to keep records for his work. That was in the office he was barred from accessing after the March 24 letter from Battaglia.

Hoadley knew from experience that if there was a belief a phone or electronic device contained evidence of misconduct, CPD had directed the electronics not be accessed. The government has provided proof of this with respect to E.I., an officer whose proposed termination letter included the following language:

"Finally, you are directed not to access or utilize any City computer, computer system, network resource or application (however characterized) or remove, erase or alter any documents or other City property (**excluding only your personal effects unconnected with City operations**) from any City facility."[2]

Joey Hoadley had been on administrative leave since January. He had known about the FBI investigation as had ever other person in CPD. It was a source of common discussion as C.H. had displayed by his refusal to subject himself to the command within CPD. Hoadley reset the electronics because he believed the techs would do so within the department. That was their usual procedure as is common within any organization that reissues equipment to other employees.

---

[2] Bates 1985

2. **Legal Issues**

The remaining legal issues generally revolve around 404(b) evidence and evidence of good character on Hoadley's part. There is also a motion by the government to keep Mr. Hoadley from offering expert testimony. The defense response will be provided by the date set by the Court. The primary point of the response is that the notice was timely, an expert may be beneficial to an understanding of the jury as to the standards for the use of force, and importantly, the expert is not going to offer an opinion that substitutes for the Court's instruction on the law or the jury's determination of the facts.

3. **Requested Voir Dire**

At this point, Mr. Hoadley has two primary concerns going forward. First, in view of the nonstop attention by the media, can he get a fair and impartial jury. There is little to say about that except we will wait to see.

To that end, Mr. Hoadley requests the Court to inquire in Voir Dire as follows:

A. Have any of you heard accounts of an investigation into the Caldwell Police Department by the government and its agencies, including the FBI?

B. Have any of you formed any opinion as to the Caldwell Police Department's operations based on something that you read or heard on radio or television?

C. If you have an opinion, whether that opinion is, would it be difficult for you to abandon that opinion and decide this case solely on the facts presented at trial?

D. Would any of you feel that you should not sit as a juror in this case based on something you have heard or read about the Caldwell Police Department.

E. If you have heard of that investigation, knowing that Mr. Hoadley was an officer in the Caldwell Police Department, what if anything could this Court do to assure Mr. Hoadley gets a fair and impartial jury?

**4. Time for trial**

The second issue is timing. The trial is set for a week. At the time that estimate was made there were fewer counts and likely fewer intended witnesses. It seems likely that the case may stretch into a second week under the circumstances here.

Respectfully submitted this 12th day of September 2022.

//s//
Charles F. Peterson
Attorney for Defendant

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on the 12th day of September 2022, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy was served on the following parties or counsel by email:

JOAHUA D. HURWIT
UNITED STATES ATTORNEY
Katherine L. Horwitz
Assistant United States Attorney
Kate.horwitz@usdoj.gov
Francis J. Zebari
Assistant United States Attorney
Frank.Zebari@usdoj.gov

                                          //s//
                                          Charles F. Peterson