Charles F. Peterson ISB# 3346
PETERSON LAWYERS
671 E. Riverpark Lane, Suite 210
Boise, Idaho  83706
Telephone (208) 342-4633
FAX (208) 955-2020
chuck@petersonlawyers.com

Attorney for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 22-cr-00056-SWK |
| Plaintiff, | **Sentencing Memorandum** |
| vs. | |
| JOSEPH ALAN HOADLEY, | |
| Defendant. | |

Joseph Alan Hoadley offers the following for the Court's consideration. He moves for a downward departure from the sentencing guidelines and a variance from guidelines based on the sentencing factors of 18 USC 3553(a).

**Downward Departure**

1. **Mr. Hoadley moves the Court to depart downward from the sentencing guidelines under §5K2.0 because there are circumstances of a kind not adequately taken into consideration by the guidelines, and / or present to a degree not adequately taken into consideration.**

§5K2.0 provides authority for the sentencing court to depart from the guideline range if there are circumstances of a kind not adequately taken into consideration by the guidelines, and / or present to a degree not adequately taken into consideration. Along the same line, 18 U.S.C. § 3553(b) provides that a district court may impose a sentence outside of the applicable Guidelines range when "the court finds that there exists an

aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."[1] Mr. Hoadley's service to his police force and to the community in general is not adequately taken into consideration by the guidelines.

The amount of community support for Joey Hoadley is overwhelming. Over 50 people have written the Court based on their observations of him as a law enforcement officer, father, son, community and civic leader, and charitable person. The support comes from an elected County Prosecuting Attorney, a former Idaho State Senator, former Caldwell Mayor, former elected County Sheriff, former Caldwell Police Chief and Captain, current State Legislator, numerous local business leaders, charity directors, a pastor, past and current police officers, a high school principal from Lewiston, numerous family members, friends and neighbors. Each letter has merit and each provides a snapshot of Joey Hoadley that is based on the observations of the writer. Five letters are highlighted here, but all of them support the relief requested:

**Chris Allgood**, current State Representative, retired Chief of Caldwell Police Department and former City Council President. His assessment of the status of Caldwell at the time Joey Hoadley began his work to clean up the city is as follows:

> For most of my career Caldwell was a very violent and dangerous place with a reputation as such that stretched far and wide. The notoriety of Caldwell being such a violent town was reported by news outlets such as the associated press, and USA today. In October of 2004 a young man was gunned down in his front yard in broad daylight; we again made national news, and the city council called the

---

[1] The sentencing court must determine whether the defendant's circumstances are sufficiently distinguished from the "heartland" of typical cases to which the Commission intended the guidelines to apply. See *Koon v. United States*, 518 U.S. 81, 94, 116 S. Ct. 2035 (1996).

**HOADLEY SENTENCING MEMORANDUM, MOTIONS FOR DEPARTURE AND VARIANCE
PAGE 2**

police administration into an emergency meeting to find a resolution. Out of that meeting a plan for a repeat offender/ gang reduction program was developed.

Allgood credits Mr. Hoadley with leading others in developing a street crimes unit that worked hand in hand with the FBI and Canyon County Sheriff's Office to make Caldwell safe again and reduce crime. Gang violence went down. People felt safe to walk the streets again. He asks that you take into consideration Hoadley's hard work, professionalism, and contribution to the city. He says that Joey was tough and professional; not abusive or corrupt. He worked long hours in a tough and dangerous job and he did it well. Joey sacrificed his own time and that of his family to build back the city he had grown up in and would ultimately raise his own son.

**Frank Wyant**, former Chief of Police. Wyant has known Joey for over twenty-five years as a friend and co-worker. He says that Joey Hoadley is dedicated to his family, community, and work:

> Through the years Joey has played a big role in the community from setting up fundraisers for those less fortunate and giving of his time to coach and develop young boys in sports. The hours that Joey has donated and sacrificed to help others is a testament to his desire to serve others and have a positive impact on the community.

Wyant notes that Joey has dedicated his life to community service. Others have written more and detailed the types and variety of charitable activities that benefit the City and its residents. Joey developed food drives, raised money for children, and helped in ways too numerous to recall. Wyant also notes the impact this has had on Joey as a man of faith and a father, sentiments echoed by so many others. His son, Nolan is a source of pride for Joey, and he the source of unimagined love for Nolan.

The picture that follows is Joey at the "Blessing Box" some of whom wrote in support have described. It is just one example of the charitable ventures he helped create

**HOADLEY SENTENCING MEMORANDUM, MOTIONS FOR DEPARTURE AND VARIANCE
PAGE 3**

to spread charity in his community. Joey created the opportunities for others to give back to others in the city who were less fortunate.



**Mylinda Hoadley** is Nolan's mother. Her letter to the Court best describes the relationship Nolan and Joey share. While many or even most of the persons who are sentenced have children, few of those in our experience have built relationships as have Joey and Nolan. She is also a mirror into what Joey's life was like as a police officer. Their city was overwhelmed by gang violence and it was in her words, "an awful place to live":

**HOADLEY SENTENCING MEMORANDUM, MOTIONS FOR DEPARTURE AND VARIANCE
PAGE 4**

Gun violence was so out of control at one point in time that responding to shootings had become just a routine of the shift. Over 130 reports of shots fired during the month of August, 2004 was enough to garner national attention. Joey and his team took this personally and were able to reduce that number to zero for the entire year by 2012.

Mylinda reports that she was able to witness the way the department treated and respected her husband, not only as a police officer but also as a friend and mentor. She cannot imagine any good would come from sending Joey to prison and making him leave the son who so needs him. That, she says would "destroy" Nolan and his passion in life. Nolan and Joey share a love of life and of baseball, and she reports that Joey has spent his life and given his time to teaching local boys about the sport, and requiring something more, community service from them as teammates.



What is odd here is the reality that Mylinda could simply sit back and let her ex-husband go off to jail, thereby gaining time and perhaps influence with her son. She and Joey have had a difficult relationship, but she sees the greater good in supporting the man who is responsible for and so involved in raising her son to be a man. Like virtually everyone else who has written to support Joey Hoadley, she sees him as a mentor to those around him, even the kids playing for his baseball team and especially for their son,

**HOADLEY SENTENCING MEMORANDUM, MOTIONS FOR DEPARTURE AND VARIANCE
PAGE 5**

Nolan. She knows the man and she knows his commitment to their son and his charitable purposes in life.



**Chris Smith**, is the former Canyon County Sheriff. After nearly 40 years in law enforcement, Chris Smith can tell the story of Caldwell's decline and domination by gangs, drugs and guns better than most anyone. He lived it.

The gang violence and narcotics trafficking, primarily carried out by Mexican gang members, had resulted in the Caldwell city center being dominated and controlled by gang members occupying abandoned buildings. They ran the downtown Businesses had left and City residents had lost faith:

> This situation resulted in the formation of a task force that was manned by all local law enforcement agencies and the DEA, FBI, and ATF. This task force still exists today and is housed in one location as a concerted effort to target gang and drug activity.
>
> I mention this because the leaders in the law enforcement community saw the need to aggressively target a problem that was affecting our community in so many ways and effecting and impacting so many families that included injuries and loss of life. I am confident that the message to the troops was "this craziness must stop, and our field officers are the front line of this effort"!
>
> From that point on there was a zero-tolerance approach towards gang members and gang activity. When a gang member was encountered by law enforcement, they were more likely to be cited or arrested than warned about an offense.

**HOADLEY SENTENCING MEMORANDUM, MOTIONS FOR DEPARTURE AND VARIANCE
PAGE 6**

That Joey has suffered already while the investigation was ongoing, up to and after the trial of this case, Chris Smith notes his decertification as a police officer. "Hoadley's lifelong career path is gone." Unlike many of the persons the Court sentences, Joey has given his life to law enforcement and whatever he does going forward, he will have to pay the costs of retraining. There is little to be gained by putting him in prison at this point.

Finally, consider a letter from an unlikely source, a recovered addict, who we refer to here as **JD**. She admits to having been an addict and dealer. She wanted to die, but Joey Hoadley saved her life and helped her face the addiction that had taken so much from her. She writes that in April, she will have 10 years clean. She is a mother of three and she is thankful for Joey's dedication to give her a second chance at life.

There is more to the contributions that Joey Hoadley made to his city than the letters detail. An assortment of certificates representing his achievements and good service were also provided to the Court through the Presentence Investigator. As those indicate, he was honored for his work, saved lives, established the K9 unit, trained officers within the department and at the POST Academy, was the Lieutenant of the Patrol Division and Investigations. He became an expert in gang tactics and policing, authored a chapter in a book on gangs, worked with the Department of Justice as an expert for the local United States Attorney's Office, and trained with other gang units in California.

- Based on the above, the record of trial as well as the supporting letters, awards and certificates, the Court should grant a downward departure based on Joey Hoadley's prior assistance to the United States Attorney's

**HOADLEY SENTENCING MEMORANDUM, MOTIONS FOR DEPARTURE AND VARIANCE
PAGE 7**

   Office, Department of Justice, County Sheriff's Office, and Canyon County Prosecutor's Office, for his exemplary assistance and support of those agencies in their efforts to reduce crime.

- Based on the above, the record of trial as well as the supporting letters, awards and certificates, the Court should grant a downward departure based on Joey Hoadley's extraordinary employment history, service to his community and family ties. In *U.S. v. Thompson*, 74 F.Supp2d 69 (1999), the court departed from 87 months to 60 months when employment history and family ties were deemed "extraordinary." In that case, the court found that "not only did the defendant exhibit a sustained commitment to his family dating back to the instant he became a father, he consistently worked to provide for them." In a similar case, the court found a three-level departure warranted after considering the defendant's "long impressive work history…where good jobs are scarce." *U.S. v. Jones*, 158 F.3d 492 (1998). The cases cited here are old, before the decision in *Booker* that the guidelines are not mandatory, but just the starting place for the Court.

- Based on the above, the record of trial as well as the supporting letters, awards and certificates, the Court should grant a downward departure because of his susceptibility to abuse if sentenced to serve time in prison. *See* U.S.S.G. § 5K2.0(a)(2); *Koon v. United States,* 518 U.S. 81, 111-12 (1996). (recognizing susceptibility to abuse in prison as a potential ground for departure).

**HOADLEY SENTENCING MEMORANDUM, MOTIONS FOR DEPARTURE AND VARIANCE**
**PAGE 8**

### Variance

2. **Mr. Hoadley moves the Court for a variance and asks the Court to impose a sentence outside the advisory guideline system.**

For the reasons set out above, the Court should impose a probationary sentence in this case. Such a sentence can achieve the goals of sentencing provided in 18 U.S.C. §3553(a), that it be sufficient but not greater than necessary.

The probation officer did not identify any factors concerning the nature and circumstances of the offense that would merit a sentence outside the guidelines but specifically identified the following with respect to the history and characteristics of the defendant:

> The defendant has over 20 years of service as a police officer with numerous awards of recognition and service to the community. This information is not accounted for in the guidelines and warrants consideration of a sentence outside the advisory guideline system.

The letters, awards, and commendations provide a basis for a variance from the Guidelines in this case. Mr. Hoadley's community service, charitable works within the Caldwell City Police Department and outside the department, and efforts described by his supporters are exceptional. Twenty plus years of service as a law enforcement officer under the circumstances described by his former Chief of Police, Captain, Mayor, County Sheriff, and the current elected County Prosecutor detail his professionalism and service exceeding that normally encountered within the law enforcement community.

Mr. Hoadley's family and friends have described his relationship with Nolan, his son. He has been the primary caregiver of his son, a fact that is not disputed by his ex-wife and is supported by the information from his counselor. The therapist describes the relationship with his ex-wife as resulting in post-traumatic stress disorder and a major

depression disorder that has required therapy and continues to require treatment. His ex-wife's choice of boyfriends has caused Joey to fear for Nolan's well-being. Nolan's mother has stated that if Joey is confined it will destroy their son. Joey's family (sisters, brother, and mother) has provided support for Nolan during the past turbulent times, but worries they might be denied contact with him if Mr. Hoadley is taken into confinement. That would leave Nolan in a precarious situation that can best be avoided by a probationary sentence.

Arguably, imprisonment might have entirely appropriate if the jury had found him guilty of using excessive force against Mr. Hooberry, thereby denying him his civil rights. But the jury found Mr. Hoadley not guilty of that offense. A sentence of probation with supervision would not diminish the jury's findings of guilt. As a result of those findings, Mr. Hoadley has lost his lifelong career, will need to find work and be retrained for another occupation. Since this matter has been pending it has been impossible for him to find word as future employers want the assurance that he will be around, and not in prison. Media coverage of the investigation and the case have painted Hoadley as a rogue cop.

Prison presents special challenges for law enforcement officers. Such officers are more likely to face retaliation and danger because of their law enforcement work. They are likely to do their time in protective custody and incur even further isolation.

During his time with the Caldwell Police Department Joey Hoadley worked his way from "night janitor" to leading the Traffic and Investigations divisions. He was highly respected and served as a mentor, as the letters of support indicate. Within the community he led charitable drives, coached little league baseball and won the respect of

**HOADLEY SENTENCING MEMORANDUM, MOTIONS FOR DEPARTURE AND VARIANCE
PAGE 10**

business leaders, former law enforcement officers and even members of the U.S. Attorney's Office that prosecuted him in this case. He was an expert witness on drug and gang matters, providing assistance in cases that took down gangs, drug dealers and gun traffickers. He also saved lives and received medals and commendations for having done so.

At sentencing, Joey Hoadley will explain his plans going forward to keep him from committing any other crimes. He will outline for the Court his understanding that he is responsible for the offenses he was convicted of, regardless of whether he agrees with the findings. He will acknowledge that he had his day in court and he understands and accepts the jury verdicts, regardless of whether he agrees with them.

For these reasons, Mr. Hoadley respectfully requests that the Court sentence him to a period of probation.

Dated this 30th day of January 2023.

//s//
Charles F. Peterson
Attorney for Defendant

**HOADLEY SENTENCING MEMORANDUM, MOTIONS FOR DEPARTURE AND VARIANCE
PAGE 11**

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on the 30th day of January 2023, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy was served on the following parties or counsel by email:

Joshua D. Hurwit
United States Attorney
Katherine L. Horwitz
Assistant United States Attorney
Kate.horwitz@usdoj.gov
Francis Zebari
Assistant United States Attorney
Frank.Zebari@usdoj.gov

                                            //s//
                                            Charles F. Peterson

**HOADLEY SENTENCING MEMORANDUM, MOTIONS FOR DEPARTURE AND VARIANCE
PAGE 12**