JOSHUA D. HURWIT
UNITED STATES ATTORNEY
KATHERINE L. HORWITZ, OKLAHOMA STATE BAR NO. 30110
FRANCIS J. ZEBARI, IDAHO STATE BAR NO. 8950
ASSISTANT UNITED STATES ATTORNEYS
1290 W. MYRTLE STREET, SUITE 500
BOISE, IDAHO 83702
TELEPHONE: (208) 334-1211
FACSIMILE:(208) 334-1413

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH ALAN HOADLEY,<br><br>The Defendant. | Case No. 1:22-cr-00056-SWS<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM** |

The United States of America, by and through Joshua D. Hurwit, United States Attorney, and the undersigned Assistant United States Attorney for the District of Idaho, hereby submits this Sentencing Memorandum. A jury found the Defendant, Joseph Alan Hoadley, guilty of falsifying a record in a federal investigation (Count Two), witness tampering by harassment (Count Three), and destroying a record to impair its use in an official proceeding (Count Four). Based on the nature of the offense and the history of this Defendant, the Government is presently asking the Court to sentence the Defendant to 41 months' imprisonment and a $150,000 fine pursuant to 18 U.S.C. § 3553(a).

I.    **Background**

On April 13, 2022, a federal grand jury in Boise indicted the Defendant for his

assault of B.H. on March 30, 2017, in Counts One and Two, charging deprivation of

constitutional rights in violation of 18 U.S.C. § 242 and falsification of records in a federal

investigation in violation of 18 U.S.C. § 1519.  *See* ECF 14.  Five months later, the grand

jury superseded and indicted the Defendant for harassing a witness, C.H., in violation of 18

U.S.C. § 1512(d)(2) in Count Three, and destroying a record in violation of 18 U.S.C.

§ 1512(c)(1) in Count Four.  In September, this Court presided over a four-day trial wherein

all four charged counts were presented to a petit jury.  ECF 79–82.

During trial, current and past Caldwell Police Department officers testified to the

Defendant's negative impact and influence over the Department.  As the founder of the

"Don't Fuck Around" crew, the Defendant was well known to be someone who expected

aggressive officers to "operate in the gray area" while policing the community.  Trial Tr.

Vol. III, at 10–12; Trial Tr. Vol. IV, at 175:16–:18 ("Q. So here in the courtroom, there's

justice; out on the streets, it's you?  A. On occasion."); *id.* at 177:24–178:10 (instructing

subordinate officers to operate in the "gray area").  The Defendant's own policing included

*repeated* abuses of detainees for his own enjoyment.

Detective Joe Cardwell described the Defendant—a high-ranking lieutenant in the

Department who supervised more than 50 officers—bragging about punching a handcuffed

detainee to his subordinates during a conference in 2016.  *See* Trial Tr. Vol. I, at 182–87

(describing the Defendant as threatening when confronted about the video).  Troubled,

Detective Cardwell reported this incident to his supervisors.  Like Detective Cardwell,

Officer Eduard Ibarra testified that he too witnessed the Defendant punch *another*

handcuffed detainee without provocation—in 2017, less than one year after the conference. *See* Trial Tr. Vol. II, at 221–22, 269–70 (demonstrating a punch to the victim's head). Also like Detective Cardwell, Officer Ibarra attempted to report this criminal behavior—only to have the Defendant obstruct it.

Immediately after the assault, the Defendant instructed Officer Ibarra: "I didn't hit him. Do you understand?" *Id.* at 223. Knowing that the Defendant had in fact abused the detainee, Officer Ibarra reported it to his supervisors (despite the Defendant's threat). *Id.* at 223–24. While this report had no impact on the Defendant, it hugely impacted Officer Ibarra. Within weeks of reporting this abuse, the Defendant had manipulated the Department's resources to have Officer Ibarra fired for policy violations. *See* Trial Tr. Vol. II, at 226, 252–53; Exs. 1030–34. Officer Ibarra wasn't the only Caldwell police officer who experienced the Defendant's retaliation and abuse of authority.

After the federal investigation began, the Defendant harassed and threatened his subordinates in an attempt to ensure their allegiance to himself and his fellow officer, Ryan Bendewald. While the Defendant was convicted of harassing one such subordinate—Chad Hessman—the Defendant's harassment and attempt to influence the federal investigation was broader. *See* Trial Tr. Vol. III, at 20–21. His abusive conduct was so pervasive the Department had to exclude him from the premises (even after he was criminally charged). *See* Trial Tr. Vol. III, at 83–84 ("We had some employees that were not comfortable with him having access to the building [because t]hey felt intimidated and threatened by him."). His obstruction transcended the intimidation of witnesses. He destroyed data on his city-issued laptop and cellphones to further prevent federal agents' ability to investigate abusive police practices.

GOVERNMENT'S SENTENCING MEMORANDUM—3

During trial, the Defendant took the stand, telling the jury of the importance of "good" policing, de-escalation, and properly documenting interactions with the public. Trial Tr. Vol. IV at 15–17. The Defendant also described in great detail pulling B.H. to the ground by his t-shirt. *See id.* at 41. This force, the Defendant testified, was necessary to prevent B.H. (who was then handcuffed and escorted by two armed police officers) from escaping. *Id.* at 46. The Defendant also explained how his one-sentence description of the force in his report was accurate. *Id.* at 50–53.

The Defendant also denied threatening Officer Hessman and explained that his "patch" comment related to how Hessman's supervisor was Doug Daniels and nothing more. *See* Trial Tr. Vol. IV, at 81, 90–91 (testifying that he never threatened, harassed, or intimidated Hessman). Finally, the Defendant explained to the jury that he wiped all the data from his city-issued laptop and cellphones as a housekeeping matter, not to prevent that information from falling into federal investigators' hands. *Id.* at 113–16.

After one day of deliberation, the jury returned guilty verdicts on Counts Two, Three, and Four. ECF 92. It acquitted the Defendant on Count One. *Id.* at 1.

## II.    The Government objects to the Final Presentence Investigation Report.

### A.    The Government objects to the exclusion of the two-offense level enhancement for abuse of position of trust under U.S.S.G. § 3B1.3.

Paragraph 65 of the Final Presentence Investigation Report (PSR) incorrectly concludes that the total offense level is 20. To the extent that this Paragraph does not apply the increased offense level under U.S.S.G. § 3B1.3, the Government objects.

In Paragraph 65, the Probation Office calculated the total offense level as 20. PSR, ECF 125 ¶ 65. Two additional offense levels are warranted because the Defendant abused his position of trust to delete information from his laptop. Moreover, in the "paramilitary

GOVERNMENT'S SENTENCING MEMORANDUM—4

style" of policing the Defendant employed, his rank allowed him to have additional control and power over lower-ranking officers. *See* Trial Tr. Vol. IV, at 83 (the Defendant testifying: "The police department operates kind of paramilitary style, where, you know, you rise up through the ranks. And it's a supervisory status, basically a culmination of years of experience and training.").

Under U.S.S.G. § 3B1.3, a two-level enhancement applies when the defendant abuses a position of public or private trust. The guidelines instruct that this enhancement is implicated when a defendant is in a position of "professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)." *See* U.S.S.G. § 3B1.3 cmt. 1. The Guideline commentary further notes that this enhancement applies when the position "contributed in some significant way to facilitating the commission or concealment of the offense." *Id.* The Ninth Circuit has affirmed the application of this enhancement when the position "entrusted the defendants with 'substantial discretionary judgment'" in their role and "gave them 'considerable deference.'" *See United States v. Adebimpe*, 819 F.3d 1212, 1219–20 (9th Cir. 2016) (applying enhancement to medical equipment suppliers in Medicare fraud case); *see also United States v. Laurienti*, 731 F.3d 967, 973–74 (9th Cir. 2013) (applying enhancement to stock broker).

During trial, Jose Menchaca testified that the Defendant only had administrative rights to his computer, which allowed him to destroy data, because he was a lieutenant. *See* Trial Tr. Vol. III, at 157:06–:22. Mr. Menchaca further testified that without these administrative rights to the laptop, the resetting would not have been possible. *See id.* at 155:12–:24. Furthermore, when asked by his counsel "why [he was] given administrator privileges," the Defendant described himself as "one of two people that was specifically

trained on the use of IAPro program, which [was] used for internal affairs, use of force, et cetera," which required administrator rights for this particular laptop. *See* Trial Tr. Vol. IV, at 117–18.

Based on this testimony during trial, it is clear the Defendant *only* had the ability to destroy data on his computer because of his supervisory role and administrative rights, which triggers the two-level enhancement under U.S.S.G. § 3B1.3. What's more, the Defendant's position and discretion as to the Department's investigation and documentation of use-of-force complaints allowed his obstruction of any investigation into his own misconduct. *See* Trial Tr. Vol. IV, at 75 (discussing oversight of various units within the Department); *id.* at 156:09–:23 (discussing oversight of subordinates' use of force). Simply, the Defendant's status as a high-ranking supervisor within the Department generally allowed him the broader, unchecked access to data and employees necessary to commit the offenses for which he was convicted. Section 3B1.3 applies.

### B.     With this enhancement, the Defendant's guideline range is 41 to 51 months.

In Paragraph 99, the Probation Office determined that the applicable guideline range was 33 to 41 months based on a total offense level 20 and a criminal history category 1. *See* PSR, ECF 125 ¶ 99. The Government objects to this conclusion. Based on an offense level of 22 and a criminal history category of I, the guideline range becomes 41 to 51 months.

### III.   Considering the nature of the current offense, a sentence of 41 months' imprisonment and a $150,000 fine is necessary to promote respect for the law, adequately deter criminal conduct, and, most importantly, protect the community.

In light of the applicable statutory factors, the Government respectfully requests that this Court sentence the Defendant to 41 months' imprisonment, a sentence within the guideline range.

GOVERNMENT'S SENTENCING MEMORANDUM—6

For the past five years, the Defendant has been exploiting his power to police by obstructing any actual or potential investigation into his abusive police practices. Between 2016 and 2022, he has obstructed justice on more than five known occasions. Three of those incidences resulted in conviction. The pervasiveness of the Defendant's belief that his police power entitled to him to abuse others and cover up that abuse is clear.

And, of course, the Defendant committed the current offense the day after being released pretrial for the charges in Counts One and Two. *See* PSR, ECF 125, ¶ 37. Like his past obstruction, he manipulated those around him to try to ensure he was never held criminally liable. He destroyed material that could have been helpful in an ongoing investigation into other abusive behaviors by his then-fellow Caldwell Police Department colleague, Officer Bendewald. Looking at the sequence of this obstruction, it's clear that the Defendant believes his own actions are above the law.

Nevertheless, he now cites his police conduct as *mitigation* against a sentence of imprisonment. But the Defendant weaponized his power and authority—both as an officer of the law and as a high-ranking supervisor—to victimize marginalized members of the community and cover up that abuse. His obstruction erodes more than federal investigators' ability to ferret out police abuse: it erodes the community's trust in their police. The harm caused by this breakdown in public trust has lingering effects that permeate throughout the community.

Tellingly, the Defendant continues to deny any criminal culpability and misplaces blame onto others: Throughout his testimony at trial, the Defendant described himself as the hapless victim of circumstances—taking no responsibility for his actions. *See* Trial Tr. Vol. IV, at 126–27 (lamenting the "rumors" and difficulty caused to him by the federal

investigation).  The Defendant shows no sign of appreciating the impact of his criminal activity on the community or the victims impacted by his obstruction.  Faced with this reality and under a totality of the circumstances, a 41-month sentence and a $150,000 fine is necessary to protect the community, promote respect for the law, and adequately deter criminal conduct.

## **CONCLUSION**

Accordingly, the Government respectfully requests that the Court sentence the Defendant to  41 months' imprisonment pursuant to the Guidelines and 18 U.S.C. § 3553(a).

Respectfully submitted this 30th day of January, 2023.

JOSHUA D. HURWIT
UNITED STATES ATTORNEY
By:

*/s/ Katherine Horwitz*
Katherine Horwitz
Assistant United States Attorney


*/s/ Francis J. Zebari*
Francis J. Zebari
Assistant United States Attorney

GOVERNMENT'S SENTENCING MEMORANDUM—8

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 30, 2023, the foregoing **GOVERNMENT'S**

**SENTENCING MEMORANDUM** was electronically filed with the Clerk of the Court

using the CM/ECF system, and that a copy was served on the following parties or counsel

by:

| | |
|---|---|
| Charles Peterson<br>671 E. Riverpark Lane, Suite 210<br>Boise ID 83706 | ☐ United States Mail, postage prepaid<br>☐ Fax<br>☒ ECF filing<br>☐ Email |

*/s/ Katherine Horwitz*
Katherine Horwitz
Assistant United States Attorney